147 So. 693

**MAGGIORE v. EAST JEFFERSON WATER-WORKS DIST. NO. I.**

**No. 32138.**

March 27, 1933.

E. Howard M'Caleb, Jr., and F. A. Middleton, both of New Orleans, and Leo W. Mc-Cune, of Gretna, for appellant.

Edward Rightor, of New Orleans, for appellee.

O'NIELL, Chief Justice.

The board of commissioners of the East Jefferson Waterworks District No. 1a, political corporation created under the provisions of Act No. 343 of 1926, adopted a resolution calling an election for the taxpayers in the district to vote upon a proposition to issue bonds to the amount of $500,000 "for the constructing and purchasing of waterworks systems within the district." The proposition was voted on by the property taxpayers and was approved by a majority of them.

August Maggiore, a property taxpayer and elector residing in the district, brought this suit to annul the proceedings and to enjoin the issuing of the bonds. The district court gave judgment for the plaintiff, annulling the proceedings and enjoining the board of commissioners from issuing the bonds. The board has appealed from the decision.

The plaintiff's contention, which the district judge sustained, is that the board of commissioners of a waterworks district has authority merely to construct and maintain a waterworks system, and has no authority to buy an existing system. The only authority of boards of commissioners of waterworks districts for issuing bonds is granted by section 10 of Act No. 46 of 1921 (Ex. Sess.), as amended by section 2 of Act No. 287 of 1926, viz.: "Water-works districts through the governing authority thereof may incur debt and issue negotiable bonds for said district for the purpose of constructing and maintaining water-works systems in such district *and for no other purpose.*" The phrase which we have italicized, "and for no other purpose," is what the plaintiff contends forbids the board to issue bonds for the purpose of purchasing a waterworks system, or for any other purpose than that of "constructing and maintaining water-works systems."

There is no dispute about the facts of the case. This waterworks district, which was created only recently, comprises the seventh, eighth, and ninth wards of the parish of Jefferson, being all of that part of the parish on the east side of the Mississippi river, and adjoining the city of New Orleans. The waterworks plant has been partially constructed, and is in fact almost completed. It has cost $1,250,000, for which bonds have been issued. The proposed additional bond issue of $500,-000 is needed for the purpose of completing the system; and, in completing it, the board of commissioners intends to buy a privately-owned distributing system, at a cost of about $200,000, to come out of the proceeds of the sale of the proposed $500,000 bond issue. This distributing system consists of about 30 miles of mains, and the equipment of service lines, meters, etc., belonging to a corporation called Jefferson Water Company, Inc., which was organized by some of the residents of the most populous part of the territory now in the waterworks district, and which distributes water from the New Orleans plant to the residences in this populous area adjoining the city of New Orleans. The dis-

tributing plant of the Jefferson Water Company, Inc., was in operation before and at the time when the waterworks district was created. The board of commissioners has already laid its mains and service lines in all of the area of the district except the area served by the Jefferson Water Company, Inc. There are 50 linear miles of mains in the area outside of the area served by the Jefferson Water Company, Inc. The line of pipe which the board of commissioners has negotiated to buy from the Jefferson Water Company, Inc., is therefore three-eighths of the total number of linear miles of mains in the whole waterworks district. Realizing the great economy that would result from buying the mains and other equipment in place, belonging to the Jefferson Water Company, Inc., instead of rendering them worthless by installing new pipe and equipment along side of the pipe and equipment already in place, the board of commissioners extended the ends of the newly laid mains slightly beyond the ends of the mains of the Jefferson Water Company, Inc., where the new line comes close to the old line, under ground, and the board put in the necessary pipe fittings, so that, by a simple operation of connecting the ends of the new pipe to the ends of the old, the two separate systems of pipe will be converted into one complete and continuous system, through which the new waterworks plant will serve water to all of the inhabitants of the district.

It is not disputed that the price which the board of commissioners has agreed to pay for the 30 miles of pipe and its equipment, belonging to the Jefferson Water Company, Inc., is a reasonable price. Hence it cannot be disputed that it would be a wasteful act on the part of the board of commissioners to render the pipe line and equipment of the Jefferson Water Company, Inc., worthless, by installing a new line and equipment beside it, instead of buying the line and equipment already in place. The board of commissioners must either buy the line of pipe and equipment in place or install a new line and equipment beside it; otherwise the inhabitants of the area now served by the Jefferson Water Company, Inc., who are taxed for the cost of the new waterworks plant, will receive no benefit whatever from it. These considerations, however, are matters of no importance if in fact the expression in section 10 of Act No. 46 of 1921 (Ex. Sess.), as amended, "and for no other purpose," forbids the board of commissioners to buy the distributing system belonging to the Jefferson Water Company, Inc., and to make it a part of the larger waterworks system which the board is constructing.

It is argued that the meaning and object of the expression "and for no other purpose," in the statute authorizing boards of commissioners of waterworks districts to construct and maintain waterworks systems, is to make it impossible for a board of commissioners of a waterworks district to buy an old and wornout waterworks plant at an excessive cost. And, in support of the argument, it is suggested that perhaps the Legislature had in mind that, about thirty years ago, when the privately owned New Orleans Waterworks Company was put out of business, a strenuous effort was made by the owners of the relic to have the city buy it at a fancy price.

An examination into the genesis of the expression "and for no other purpose," as used in this statute, leads us to believe that the idea was merely to forbid the board of commissioners of a waterworks district, or the governing authorities of any other political subdivision of the state, to issue bonds for a purpose not related to the functions of the board of commissioners of a waterworks district, or the functions of the governing authorities of any other political subdivision of the state. For example, in the Constitution of 1921, article 14, § 14, subsection (b), it was provided that parishes should not issue bonds for any purpose other than for constructing and maintaining public roads and bridges, courthouses, jails, hospitals, or other public buildings or works of public improvement, or the necessary furnishings or equipment thereof, or for such other public purposes as the Legislature might authorize; that municipal corporations should not issue bonds for any purpose other than for opening, constructing, paving or improving streets, roads or alleys, constructing bridges, purchasing or constructing waterworks, etc.; and that school districts should not issue bonds for any purpose other than the acquiring of lands for building sites or playgrounds, or for purchasing, erecting, enlarging or improving school buildings or teachers' homes, or for the furnishing or equipment thereof. In subsection (c) of the same section it was provided that road districts might issue bonds for the purpose of opening, constructing or maintaining public roads, highways or bridges; and that sewerage districts might issue bonds for the purpose of constructing sewers and sewage disposal works. There was then no provision in the Constitution for the crea-

tion of waterworks districts. It was assumed that waterworks systems would be established only in municipal corporations. Hence, among the purposes for which municipal corporations were authorized by the Constitution to issue bonds, was for "purchasing or constructing water works," etc. The Legislature, therefore, could not forbid municipal corporations to issue bonds to purchase waterworks systems; and there is no apparent reason why the Legislature should forbid the boards of commissioners of waterworks districts to issue bonds for the purpose of purchasing, as well as for the purpose of constructing, waterworks systems, now that the Legislature has provided for the creation of waterworks districts.

Act No. 46 of 1921 (Ex. Sess.) was enacted to give effect to the constitutional authority of municipal corporations, parishes, school districts, road districts, sewerage districts and gravity drainage districts to incur debts and to issue negotiable bonds for the purposes appropriate to the governmental functions of such political corporations, respectively. In the seventh section of the act, defining the authority of municipal corporations in that respect, it is provided that they may incur debt and issue bonds for the purpose, among other purposes, of "purchasing or constructing waterworks." The reason why the same authority was not given to the governing authorities of waterworks districts was that there was no provision made for the creation of waterworks districts, the supposition being that waterworks systems would be established only in municipal corporations.

Section 10 of Act No. 46 of 1921 (Ex. Sess.) provides that sewerage districts, through the

governing authority of the municipal corporations in which such districts are situated, may incur debt and issue bonds to construct sewers and sewage disposal works for such districts, "and for no other purpose." That seems to have been the first appearance of the expression "and for no other purpose," in the law on this subject. Waterworks districts were then unknown; and it is not at all likely that the expression "and for no other purpose" was intended to forbid the governing authorities of municipal corporations to buy a privately owned system of sewers or sewage disposal works, because it is not likely that the Legislature contemplated that there would ever be a privately owned system of sewers or sewage disposal works. Besides, why forbid municipal corporations to issue bonds to buy existing systems of sewers or sewage disposal works, and at the same time authorize them to issue bonds to buy existing waterworks systems, as municipalities are authorized to do under the seventh section of the act?

Sections 2 and 10 of Act No. 46 of 1921 (Ex. Sess.) were amended by Act No. 209 of 1924, so as to provide for the creation of "sewerage districts composed of territory outside of the corporate limits of municipal corporations," and to make the police juries the governing authorities of such sewerage districts. The tenth section of the act, as thus amended, provides that such a sewerage district, through the police jury as its governing authority, or a sewerage district within a municipal corporation, through the municipal authorities, may incur debt and issue negotiable bonds for the purpose of constructing and maintaining sewers and sewage disposal works, "and for no other purpose." It is not likely that the expression "and for no other purpose" was used there to forbid sewerage districts to buy privately owned sewerage systems. The idea was to forbid such districts to incur debt or issue negotiable bonds for any purpose not related to the purpose for which such districts were created.

Sections 2 and 10 of Act No. 46 of 1921, Ex. Sess. (as already amended by Act No. 209 of 1924), were amended by Act No. 287 of 1926, so as to provide for the creation of waterworks districts, with the waterworks commissioners as the governing authorities of such districts. The amendment of the tenth section of the act, by Act No. 287 of 1926, consists merely of the addition—after the provisions authorizing sewerage districts to incur debt and issue negotiable bonds—of this provision, viz.: "Waterworks districts through the governing authority thereof may incur debt and issue negotiable bonds for said district for the purpose of constructing and maintaining water-works systems in such district and for no other purpose." The language was merely a repetition of what had just been said with reference to sewerage districts; and there is no reason to believe that the expression "and for no other purpose" had a different meaning in its reference to waterworks districts.

In the concluding section of Act No. 287 of 1926, it was provided that the act should not have effect unless the joint resolution (Act No. 51) adopted at that session, providing for the amendment of subsection (a) of section 14 of article 14 of the Constitution, so as to provide for the creation of waterworks districts, should be ratified in the November election.

In the same session of the Legislature, there was enacted another law which contained the provision that it should not go into effect unless the constitutional amendment providing for the creation of waterworks districts should be ratified by the electors in the November election. We refer to Act No. 343 of 1926, providing, in detail, for the creation and government of waterworks districts. The fifth section of the act provides that such waterworks districts shall have the right and power of expropriating property for the purpose of acquiring land for any purpose that it may find necessary in the operation of a waterworks system, *"and may acquire by donation, purchase or expropriation any existing waterworks system in the district."* (The italics are ours.) It must be conceded, therefore, and in fact it is conceded, that the commissioners of a waterworks district have the right to buy an existing waterworks system in the district, instead of constructing a new system; and it seems unreasonable to believe that the Legislature meant to allow the commissioners to issue bonds for the construction of a waterworks system, and at the same time to forbid them to issue bonds for the purpose of buying an existing waterworks system in the district. How could an existing waterworks system be bought, any more readily than a waterworks system could be constructed, without the issuing of bonds? It is true that Act No. 343 of 1926 does not provide that a waterworks district may issue bonds for the purpose of buying an existing waterworks system; but the Constitution provides, in subsection (b) of section 14 of article 14, that municipal corporations may issue bonds for the purpose of "purchasing or constructing waterworks." And, by the

amendment of subsection (a) of section 14 of article 14 of the Constitution, pursuant to Act No. 51 of 1926, waterworks districts are given the same authority that municipal corporations have to "incur debt and issue negotiable bonds" for the purposes for which waterworks districts are created.

 It might well be conceded, to avoid argument, in deciding this case, that the commissioners of a waterworks district have no authority to issue bonds to buy an existing waterworks plant, complete, for the purpose of operating it as it is; and yet there would be no cause for complaint in this case. The distributing system which the commissioners of the East Jefferson Waterworks District No. 1 intend to buy is to form only a comparatively small part, less than one-eighth in cost, of the waterworks system which the board of commissioners is constructing. It cannot be doubted that the right to construct a waterworks system includes the right to buy the material necessary for the construction of the system. It cannot be doubted that, if the Jefferson Water Company, Inc., would disinter its 30 miles of mains, and disconnect the lengths of pipe, the board of commissioners of the district would have the same right to buy the secondhand pipe that it has to buy new pipe, out of the proceeds of the proposed bond issue. It would be giving the law a very narrow construction, therefore, to say that the board of commissioners shall not buy the 30 miles of pipe, and its equipment, in place, with a part of the proceeds of the proposed bond issue. In Cooley v. Sewerage District No. 1 of Slidell, 172 La. 1019, 136 So. 37, 38, it was held that the authority of a sewerage district, "to incur debt and issue negotia-

ble bonds for the purpose of constructing * * * sewers and sewerage disposal works," included the authority to incur debt and issue negotiable bonds for the purpose of improving the sewers and sewage disposal works. It is not a more liberal construction of the law to say that the authority of a waterworks district to incur debt and to issue negotiable bonds for the purpose of constructing a waterworks system includes the authority to buy, with a part of the proceeds of such bonds, an existing distributing system, to form a comparatively small part, less than one-eighth in cost, of the waterworks system to be constructed.

The judgment appealed from is reversed, and the plaintiff's demand is rejected and his suit is dismissed at his cost.

ODOM, J., dissents.